Read, J.
As to the first error assigned, the bill of exceptions shows, among other things, that the plaintiff, having given in-evidence the whole of a publication, parts of which were material and set forth in the second count, the defendant offered to-prove, in mitigation of damages, the truth of certain other portions-of said publication not declared upon, which proof was objected to by the plaintiff, and overruled by the court.
In construing bills of exceptions, it is not to be taken for granted that the court erred ; but reasonable inferences are to be drawn in favor of the judgment. What, then, must be the ^conclusion, if we adhere to this well-established and familiar rule ? Simply that the parts of the publication now declared upon, were not relied upon for any puteóse whatever by the plaintiff. If we looked to the bill of exceptions merely, it might fairly be presumed that the matters in the publication not counted upon, were wholly immaterial, and not competent evidence either to aggravate or mitigate damages. But, admit that the parts of the publication not counted upon, contained distinct and separate libels, the bill of exceptions does not show that they were offered in evidence to prove malice or for any other purpose. Distinct and separate libels can not be given in evidence to aggravate damages, because they are the subject of distinct actions. Nor can the truth of distinct libelous matter be given in evidence to mitigate damages; because no such issue is made by the pleadings. But, if it be designed that their truth should affect character, it is not competent, because the general character of the plaintiff only is in issue, and can not be attacked by proof of particular acts. There is no instance in the books of permitting distinct libels, not declared upon, to be admitted as evidence by the plaintiff, except in some case* where the intent is doubtful, and then to show malice. And, when admitted for this purpose, it is expressly laid down that the jury shall not take such libels into consideration, in their estimate of damages. . But, if the intent be manifest (such libels only being admissible to show the quo animo, when the intent is doubtful),, they are not admissible as evidence at all. 3 Starkie on Ev. 870. But in no instance have such libels been admitted to be proven true to mitigate damages. Matters not capable of supporting an action or constituting a justification, may be given in evidence in aggravation or mitigation of damages, as there is no other mode *425, 426 of bringing it before the court and jury. Now it can not bo presumed that the court violated any of these well-known principles of law, unless the bill of exceptions expressly disclose the fact-In the case before us, the nature of the libel forbids any doubt as to the quo animo, and hence the court would be compelled to exclude distinct *and separate libels as proof for any purpose, The fact that all the parts of a publication must come before the court, because certain portions are declared upon as libelous, does not show that the parts not counted upon, were resorted to for any purpose; and, if not competent proof, they were, we are bound to presume, rejected by the court. They certainly were, in this instance, rejected, so far as the defendant was concerned ; and there is no more doubt but they wore rejected as to the plaintiff.
As to the second error assigned:
That the court erred in refusing to permit the defendant to prove, in mitigation of damages, the plaintiff's general reputation of having, when marshal of the United States for the district of Ohio, swindled his deputies ; and also his general reputation of having been indicted and convicted for such swindling.
Such evidence is admissible upon no rule of law. G-eneral reputation of a particular act is not general repute cion. It would be strange, if the truth of the act could not be admitted in evidence to mitigate, that the reputation could; that you should exclude the substance and admit the shadow. The general character of the plaintiff, and not the reputation of particular acts, is only admissible. Particular acts of dishonesty aro not admissible.
This disposes, also, of the third error assigned.
As to the fourth error assigned:
That the court erred in refusing to charge the jury that, in estimating the damages, they might take into consideration the fact, that, in the publication, parts of which were declared upon, there was a charge of forgery against said Patterson ; and that, not having attempted, by evidence, to clear himself of said charge, he had tacitly admitted its truth.
This is a marvelous assignment of error! How could the court charge the jury that the plaintiff had tacitly admitted himself to be guilty of forgery, because he had not introduced proof to exculpate himself from the charge, when that matter ’I'vvas not before the court and jury for consideration, and the state of proceedings and the law forbid any such proof?
*427 The fifth error assigned is, that the court erred in not granting a now trial, upon the ground of misdirection and improperly ruling against evidence, as above stated. This has been considered.
The sixth error assigned is, that the court erred in refusing to grant á new trial on the ground of excessive damages.
In cases where the damages are to be determined by the sound discretion of the jury, in view of all the evidence, the court will not interfere to grant a new trial on the ground of excess, unless the damages are so outrageously gross as to convince the court that the jury must have acted from corruption, or bias, or mistake, or some other improper influence, instead of a sound and enlightened judgment. If men will print scandalous and defamatory matter concerning others, it is the province of a jury to make compensation and correct the evil by their verdict; and it is neither the disposition nor duty of the court to interfere. 'The press should be the pure and enlightened organ of public instruction. To claim that a man may write and publish what he pleases, however scandalous and defamatory, is upon the samo principle that the highwayman desires the privilege to plunder and rob. The constitution has wisely observed this distinction ; and, whilst it secures the liberty of the press, it holds every man responsible for his abuse, and declares that every person, for an injury done him in his reputation, shall have remedy by due course of law, and right and justice administered without denial or delay. It is the sworn duty of the jury to secure this remedy by rendering a verdict of damages in such amount as right and justice demand. Reputation is the sacred right of every person, and a gross and defamatory attack upon that, causes more pain and shocks more rudely all the feelings which spring from the tender and holy relations of life, than an injury to person or property. When defamation shall become so common that men cease to be sensitive of character, it will be evidence of that insensibility which precodes the disolution of the social tie. *The heat and strife of party forms no excuse, and juries should rightly regard such, abuse of the press as endangering our free institutions. If it comes to this, that men, because they happen to entertain different political opinions, shall be permitted to blacken and defame each other’s characters, instead of regarding the fair fame .of all as the best and dearest property of the whole community, it will cast a dark shade over the blessed principle of self-government, which *428 we hope, by our example, to make the common property of the world. The matter before the court had its origin, no ,doubt, in that sort of vulgar and low abuse which has become too common, and which some men regard as a proper exercise of political rights, but which all honorable and honest men should despise.
We are not disposed to withdraw such men from the legitimate action of a verdict of a jury, or in any sense to weaken the example.
The seventh error assigned is in the following words: “The court erred in refusing to grant a new trial, because of the inconsistency and contradiction of the verdict of thq jury. The verdict acquits the defendant (the plaintiff in error) of the publication of the libelous matter charged in the first count of the declaration, and finds all the issues made on the second count in the declaration in favor of the said plaintiff (the defendant in error), one of which issues, to wit, the one made by the first special plea of the said defendant (the plaintiff in error), is and was that the plaintiff had falsely charged the defendant with having published the libelous words and matter charged in the said first count of said declaration.” We may not exactly comprehend this objection, nor have we been enlightened by counsel, nor do we obtain a clue to the matter by looking through this long, tangled, and confused record. If we comprehend the objection, it is this : The declaration contains two counts. The jury find the defendant not guilty on the first count, thereby finding that the defendant had not falsely charged the plaintiff, etc., and find, on an issue joined *under the second, that the defendant did publish the false and defamatory libel named in the first count. How the special plea could be an answer to the second count, by denying the libel mentioned' in the first, is not perceptible, unless the same libel be declared upon in both counts. And how finding the defendant not guilty on the first count, could be injurious to him, is more than we can per-1 coive. The finding may show that the plaintiff should have been found guilty on both counts. But counsel very well know that each count in a declaration, in theory, contains a distinct charge, and that the finding on one cottnt, in no sense involves a finding on the other count.
The eighth and ninth errors assigned, charge errors in all things,' special and general.
We have not been able to find any error in this record.
Judgment affirmed.